[No. B062817. Second Dist., Div. Four. Apr. 16, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN DEWAYNE WALKER, Defendant and Appellant.

[No. B072094. Second Dist., Div. Four. Apr. 16, 1993.]

In re KEVIN DEWAYNE WALKER on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part B, the petition for writ of habeas corpus, and the last sentence of the Disposition pertaining to the habeas corpus petition.

## COUNSEL

John Paul Shaby, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner..

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Pamela C. Hamanaka and Arthur H. Auerbach, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## HOFFMAN, J.*—

### A.

### DEFENDANT'S APPEAL

### INTRODUCTION

Following trial by jury, defendant was convicted of attempted murder in the second degree (Pen. Code, § 664/187, subd. (a), count 1)[1] and assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1), count 2). The allegations in both counts that defendant personally used a dangerous weapon, a knife (Pen. Code, § 12022, subd. (b)), and personally inflicted great bodily injury upon the victim (Pen. Code, § 12022.7) were found to be true. Defendant thereafter admitted two of the alleged prior convictions. He was sentenced to state prison for a total of 14 years. Defendant timely appealed.

---

. *Judge of the Municipal Court for the Los Angeles Judicial District, sitting under assignment by the Chairperson of the Judicial Council.

[1] The court, not having instructed the jury regarding first and second degree murder, by nunc pro tunc order of August 19, 1991, found the crime of which defendant was convicted in count 1 to be attempted murder in the second degree.

CONTENTIONS

1. The trial court erred in refusing defense counsel's request to instruct the jury with CALJIC Nos. 4.30 and 4.31.

2. The trial court erred in failing to instruct the jury sua sponte on the lesser offense of attempted voluntary manslaughter.

3. If the court had no sua sponte duty to instruct on voluntary manslaughter, defendant was denied effective assistance of counsel by his counsel's failure to request such instructions.

FACTUAL STATEMENT

*Prosecution Case.*

On April 14, 1991, at approximately 6:30 p.m., Michael Reilly went to a coworker's house for a barbecue. While at her home he met her son, Kevin White. After a few hours they decided to leave the house and go bowling or play video games. On the way they stopped at the apartment of White's sister, Sylvia. In the hallway of her apartment, they met defendant, Sylvia's neighbor. Reilly did not know defendant. The three men spent one-half hour in Sylvia's apartment and then decided to go to Santa Monica Pier to play video games.

After playing video games at the pier, they went to Venice Beach, parked near the boardwalk and walked toward rocks which entered the ocean, like a jetty. White walked ahead while defendant and Reilly followed, walking side by side. When they arrived at the rocky area, defendant told Reilly to look to his left, and when he did so, defendant grabbed him from behind and started to stab him.

Reilly screamed, "Help. He's got a knife. He's trying to kill me." White, who was then 10 to 15 feet ahead, turned around. Defendant stabbed Reilly in the chest, under his arm and on his cheek. Reilly fell to the ground and defendant stabbed him in the back of his head. White ran to defendant, grabbed him, and talked him out of continuing his attack on Reilly. He noticed that defendant looked "weird" and "spaced-out."

White heard defendant say, "He's looking bad. He's looking bad. I might as well ice him now." White responded, "Man, this is a friend. This is my mom's friend. I can't let you do this to him." When White asked defendant why he attacked Reilly, defendant said Reilly reminded him of someone who

raped his sister a long time ago. Defendant disappeared behind a wall and reemerged wearing different clothing. White took Reilly back to his car and drove him to UCLA Medical Center where he remained for seven days. White called the police from the hospital and told them where they could find defendant.

Defendant was arrested the following day. He was with Stephanie Hunter. When defendant was informed that he was under arrest for assault with a deadly weapon the night before, Hunter overheard and said that was impossible because defendant had been with her at that time.

*Defense Case.*

Hunter testified that she lived with defendant. The day before his arrest, defendant used drugs during the afternoon and evening hours. Later that evening, White and Reilly came to her apartment and then left with defendant. When defendant left he was "mumbling" and acting "weird." Defendant came home at midnight; he was crying and acting "weird."

Dr. Kaushal Sharma, a forensic psychiatrist, testified that he had spoken with defendant about his use of drugs. He testified about the effects of cocaine and a drug called "ice." He said those drugs can make a person behave aggressively and do things he might not do if not under the influence of the drug.

DISCUSSION

I

*The trial court did not err in refusing to give CALJIC Nos. 4.30 and 4.31*

■ Defendant contends the court erred in refusing his request to instruct the jury with CALJIC Nos. 4.30[2] and 4.31.[3] We disagree.

CALJIC No. 4.30 serves to instruct a jury that a defendant who is "unconscious" at the time of the commission of the crime cannot be found

---

[2]CALJIC No. 4.30 states, in pertinent part: "A person who commits what would otherwise be a criminal act, while unconscious, is not guilty of a crime. [¶] This rule of law applies to persons who are not conscious of acting but who perform acts while . . . [under] the involuntary taking of drugs."

[3]CALJIC No. 4.31 states: "If the evidence establishes beyond a reasonable doubt that at the time of the commission of the alleged crime the defendant acted as if he were conscious, you should find that he was conscious, unless from all the evidence you have reasonable doubt that the defendant was in fact conscious at the time the alleged crime. [¶] If the evidence raises a reasonable doubt that the defendant was in fact conscious, you must find that he was then unconscious."

guilty of the crime. CALJIC No. 4.31 sets forth a presumption of consciousness. These instructions state the fundamental principle expressed in Penal Code[4] section 26, subdivision Four (formerly subd. Five),[5] that a defendant cannot be adjudged guilty of any crime with which he is charged if he committed the act while unconscious. (*People* v. *Wilson* (1967) 66 Cal.2d 749, 761 [427 P.2d 820]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, §§ 214, 215, pp. 246-249.)

Unconsciousness caused by voluntary intoxication is, however, governed by section 22,[6] not section 26. (*People* v. *Conley* (1966) 64 Cal.2d 310, 323-324 [49 Cal.Rptr. 815, 411 P.2d 911].) Although voluntary intoxication may at times amount to unconsciousness, it cannot give a complete defense under section 26, subdivision Four; it can only negate specific intent under section 22. (*People* v. *Baker* (1954) 42 Cal.2d 550, 575 [268 P.2d 705]; *People* v. *Alexander* (1960) 182 Cal.App.2d 281, 289-290 [6 Cal.Rptr. 153]; 1 Witkin & Epstein, *supra*, § 217, pp. 250-251, and see §§ 212, 213, pp. 243-246.) Section 22 has been incorporated into CALJIC Nos. 4.20, 4.21, and 4.22.[7] These instructions were properly read to the jury in light of the evidence that defendant was voluntarily intoxicated with narcotics at the

---

[4]All further references are to the Penal Code unless otherwise specified.

[5]Section 26, subdivision Four provides in part: "All persons are capable of committing crimes except those belonging to the following classes: [¶] . . . . Four—Persons who committed the act charged without being conscious thereof."

[6]Section 22 provides: "(a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation or malice aforethought, with which the accused committed the act. [¶] (b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged. [¶] (c) Voluntary intoxication includes the voluntary ingestion, injection, or taking by any other means of any intoxicating liquor, drug, or other substance."

[7]CALJIC No. 4.20 was read as follows: "The law provides that no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. [¶] In the crime charged in Count 2, Assault with a Deadly Weapon, the fact that the defendant was voluntarily intoxicated is not a defense and does not relieve him of responsibility for the crime."

CALJIC No. 4.21 was read as follows: "In the crime of attempted murder of which the defendant is accused in Count I of the information, a necessary element is the existence in the mind of the defendant of the specific intent to kill. [¶] If the evidence shows that the defendant was intoxicated at the time of the alleged crime, you should consider that fact in determining whether defendant had such specific intent. [¶] If from all the evidence you have reasonable doubt whether the defendant formed such specific intent, you must find that he did not have such specific intent."

CALJIC No. 4.22 was read as follows: "Intoxication of a person is voluntary if it results from the willing use of any intoxicating liquor, drug or other substance, knowing that it is capable of an intoxicating effect or when he willingly assumes the risk of that effect. [¶]

time of the incident. Therefore, the trial court did not err in refusing to instruct the jury with CALJIC Nos. 4.30 and 4.31.

## II

*The trial court had no sua sponte duty to instruct the jury on attempted voluntary manslaughter.*

■ Defendant's contention the trial court had a sua sponte duty to instruct the jury on attempted voluntary manslaughter is likewise unmeritorious.

Defendant maintains that since the "entire defense" hinged on defendant's lack of the requisite intent to kill for attempted murder, "the trial court [had] a duty under [*People* v.] *Saille* [(1991) 54 Cal.3d 1103 (2 Cal.Rptr.2d 364, 820 P.2d 588)] to instruct as to the possibility that [defendant's] voluntary intoxication negated the intent to kill which would *reduce the matter to a voluntary manslaughter,* if the jury so found." (Italics added.)

Defendant acknowledges that *People* v. *Saille* (1991) 54 Cal.3d 1103 [2 Cal.Rptr.2d 364, 820 P.2d 588] holds the trial court does not have a sua sponte duty to instruct on attempted voluntary manslaughter when there is evidence of a defendant's voluntary intoxication, but asserts that *Saille* "does not apply to this case" because it does not specifically address the question how voluntary intoxication relates to the mental state "intent to kill."

We disagree with defendant's analysis of *Saille* and find, contrary to defendant's assertions, the Supreme Court's holding in that case is directly relevant to the issues defendant raises on this appeal. In *Saille,* the court held that abolition of the diminished capacity defense eliminated the concept of " 'diminished capacity voluntary manslaughter' (nonstatutory manslaughter)" as a defense, explaining that now, when an intentional killing is shown, malice aforethought is established. (54 Cal.3d at p. 1114.)[8] However, the court held a defendant is still free to show that, because of voluntary intoxication, the intent to kill was not in fact formed. (54 Cal.3d at pp. 1116-1117.)

The *Saille* court explained: "[U]nder the law relating to mental capacity as it exists today, it makes more sense to place on the defendant the duty to request an instruction which relates the evidence of his intoxication to an

---

Voluntary intoxication includes the voluntary ingestion, injection or taking by any other means of any intoxicating liquor, drug or other substance."

[8]Section 192 defines voluntary manslaughter as the "unlawful killing of a human being *without malice.* . . . [¶] . . . upon a sudden quarrel or heat of passion." (Italics added.)

element of a crime, such as premeditation and deliberation. This is so because the defendant's evidence of intoxication can no longer be proffered as a defense to a crime but rather is proffered in an attempt to raise a doubt on an *element of a crime* which the prosecution must prove beyond a reasonable doubt. In such a case the defendant is attempting to relate his evidence of intoxication to an element of the crime. Accordingly, he may seek a 'pinpoint' instruction that must be requested by him [citation], but such a pinpoint instruction does not involve a 'general principle of law' as that term is used in the cases that have imposed a sua sponte duty of instruction on the trial court. The court did not err, therefore, in failing to instruct sua sponte." (54 Cal.3d at p. 1120, italics added.)

Most of the foregoing passage from *Saille* is quoted with approval in an attempted murder case, *People* v. *Morales* (1992) 5 Cal.App.4th 917, 927 [7 Cal.Rptr.2d 358]. In *Morales*, the court specifically held the trial court had no sua sponte duty to instruct on attempted voluntary manslaughter and that, if there was sufficient evidence of intoxication to support an instruction on the absence of intent to kill due to voluntary intoxication, the obligation was on the defendant to request it. (*Ibid.*)

Here, defendant's counsel did request "pinpoint" instructions relating defendant's voluntary intoxication to the intent to kill element of attempted murder and, as we discussed above, those instructions, CALJIC Nos. 4.21 and 4.22 (see fn. 7, *ante*), were read to the jury. Thereafter, defendant's counsel argued to the jury his theory of the case, that defendant did not have the intent to kill for attempted murder, as charged in count 1, because his voluntary intoxication negated that specific intent and, therefore, he could only be guilty of the general intent crime of assault, as charged in count 2.

Under both *Saille* and *Morales*, the trial court had no sua sponte duty to instruct the jury on the lesser crime of attempted voluntary manslaughter. Accordingly, the trial court did not err in failing to do so.

### III

*Defendant was not denied effective assistance of counsel.*

Defendant asserts that if the court had no sua sponte duty to instruct the jury on attempted voluntary manslaughter, then defendant's counsel should have requested those instructions and his failure to do so demonstrates defendant was denied effective assistance of counsel. We disagree.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of his conviction has two components.

(*People* v. *Ledesma* (1987) 43 Cal.3d 171, 216 [233 Cal.Rptr. 404, 729 P.2d 839].) First, the criminal defendant must show his counsel's performance was deficient. (*Ibid.*; *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) In addition, the defendant must establish prejudice before he can obtain relief on an ineffective-assistance claim. (*People* v. *Ledesma, supra*, 43 Cal.3d at p. 217.)

In determining whether defense counsel's performance was deficient, a court must exercise deferential scrutiny. (*People* v. *Ledesma, supra*, 43 Cal.3d at p. 216.) The first and fundamental reason for such deference involves the danger of second-guessing trial counsel. (*Ibid.*) That is so, because the means of providing effective assistance are many and, as a consequence, counsel has wide discretion in choosing which means to use. (*Ibid.*) Further, systematic "second guessing" by appellate courts might have adverse consequences on the quality of legal representation provided to criminal defendants and on the functioning of the criminal justice system itself. (*Ibid.*)

Therefore, if the record shows trial counsel's challenged acts or omissions resulted from an informed tactical choice within a range of reasonable competence, the conviction must be affirmed. (*People* v. *Pope, supra*, 23 Cal.3d at p. 425.) In contrast, where the record reveals that counsel has failed to research the law or investigate the facts in the manner of a reasonably diligent and conscientious advocate, and that defendant was prejudiced as a result, the conviction should be reversed on the ground of deprivation of adequate assistance of counsel. (*Id.* at pp. 425-426.) Of course, the burden of proving a claim of inadequate assistance at trial is on the appellant. (*Id.* at p. 425.)

On this record, it appears counsel's decision, to attempt to negate the specific intent to kill element of attempted murder and argue defendant could then only be guilty of assault, was an informed one among his tactical alternatives. He did not have the option to argue before the jury for a reduction of the offense to attempted voluntary manslaughter because of defendant's voluntary ingestion of drugs, which is the premise on which defendant bases his arguments on appeal. That is true because had counsel been successful in negating the intent to kill element necessary for the jury to find attempted murder, the jury likewise could not have found the elements of attempted voluntary manslaughter, which also requires an intent to kill.

As we discussed, *ante*, in *Saille*, the court explained that, when the diminished capacity defense was abolished, the concept of " 'diminished

capacity voluntary manslaughter' (nonstatutory manslaughter)" as a defense was eliminated (54 Cal.3d at p. 1114) and, now, when the intent to kill is shown, malice is also established (*ibid.*). Thus, the traditional distinction between murder and voluntary manslaughter—the absence of malice—is no longer viable when the issue is whether the voluntary ingestion of drugs negated the defendant's intent to kill and, therefore, malice. Thus, in the instant case, evidence of defendant's voluntary intoxication did not support a request for instructions to the jury on attempted voluntary manslaughter.[9]

■ Manslaughter is the unlawful killing of a human being without malice; it is voluntary manslaughter when the killing is "upon a sudden quarrel or heat of passion." (§ 192, subd. (a); CALJIC No. 8.40 (1989 rev.); *People* v. *Saille, supra*, 54 Cal.3d at p. 1114.) Thus, "[s]ection 192 . . . negates malice when the intentional killing results from a sudden quarrel or heat of passion induced by adequate provocation." (*People* v. *Saille, supra*, 54 Cal.3d at p. 1114.) If there is no adequate provocation, or the passion has had time to subside, the killing will not be reduced from murder to manslaughter. (1 Witkin & Epstein, *supra*, § 491, pp. 555-556; CALJIC Nos. 8.42, 8.43.)

■ In this case, as in *People* v. *Daniels* (1991) 52 Cal.3d 815, 868 [277 Cal.Rptr. 122, 802 P.2d 906], there was no evidence of provocation by Reilly and no evidence that defendant was "in the 'heat of passion' " when he attacked Reilly. That defendant was bent on revenge for his sister's long-ago rape was insufficient to warrant manslaughter instructions. (*Id.* at p. 868.) The rule is that, if sufficient time has elapsed for the passions of an ordinarily reasonable person to cool, the killing is murder, not manslaughter. (*Ibid.*) Moreover, the record is barren of evidence that defendant's acts were excusable or justifiable or that defendant honestly but unreasonably believed he was acting in self-defense.

Here, defense counsel's theory of the case was that there was an absence of the intent to kill and thus the only crime of which defendant could be convicted was assault. Based on the record before this court, we cannot say that counsel's choice of that theory was a tactical decision which would not be made by a diligent, ordinarily prudent lawyer. (*People* v. *Pope, supra*, 23 Cal.3d at p. 424.)

To the contrary, trial counsel conducted himself in a manner to be expected of a reasonably competent attorney acting as a diligent advocate and his challenged acts or omissions did not result in the withdrawal from

---

[9]Had Reilly been killed, involuntary manslaughter instructions would have been proper. (*People* v. *Saille, supra*, 54 Cal.3d at p. 1117.)

defendant of a potentially meritorious defense. (23 Cal.3d at p. 425.) Therefore, since counsel's performance was not deficient, defendant has failed to meet his burden to establish his claim of inadequate trial counsel. (*Ibid.*)

### B.

### Defendant's Petition for Writ of Habeas Corpus*

. . . . . . . . . . . . . . . . . . . . . . . .

### Disposition

The judgment on appeal is affirmed in its entirety.

. . . . . . . . . . . . . . . . . . . . . . . .*

Woods (A. M.), P. J., and Epstein, J., concurred.

---

*See footnote, *ante*, page 1615.