[No. G043833. Fourth Dist., Div. Three. Oct. 12, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
SUZANNE AMELIA CARLSON, Defendant and Appellant.

698

## Counsel

R. Clayton Seaman, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Michael Murphy and James D. Dutton, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RYLAARSDAM, Acting P. J.**—The trial court sentenced defendant Suzanne Amelia Carlson to 15 years to life in prison and imposed a $6,000 restitution fine after a jury found her guilty of second degree murder (Pen. Code, § 187, subd. (a); unless otherwise indicated all further statutory references are to the Penal Code), and gross vehicular manslaughter while intoxicated with a prior conviction (§ 191.5, subd. (d)). Defendant also pleaded guilty to possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), driving on a suspended license (Veh. Code, § 14601.5, subd. (a)), and driving while in possession of marijuana (Veh. Code, § 23222, subd. (b)). The court imposed a concurrent sentence and fines for these charges.

Defendant contends the trial court erred by refusing to give CALCRIM No. 626, which states voluntary intoxication resulting in unconsciousness can reduce a charge of murder to involuntary manslaughter. In a related argument she attacks her conviction on count 2, claiming it is inconsistent to allow unconsciousness to reduce one's criminal culpability on a murder charge to mere criminal negligence while a charge of gross vehicular manslaughter requires proof of gross negligence. Alternatively, defendant argues the court erred in allowing the jury to find her guilty of both murder and gross vehicular manslaughter while intoxicated for the same act. Finally, she asserts that, since the trial court stayed her prison term for gross vehicular manslaughter under section 654, it erred by imposing a restitution fine for that

offense. The Attorney General concedes the last argument's merit, but otherwise claims no error occurred.

We shall modify the judgment to reduce the restitution fine to $3,000, but otherwise affirm the judgment.

## FACTS

Defendant suffered three convictions for driving while under the influence of alcohol between 2001 and 2006. After each conviction, she participated in drunk driving offender programs and received advisements on the dangers of driving while intoxicated. In addition, her driving privileges were suspended.

In January 2007, defendant worked at a restaurant in Mission Viejo. One evening, after her shift ended, defendant's mother drove her back to the restaurant where she had dinner and drinks with Scott Turner and others.

Around midnight, defendant and Turner left the restaurant in Turner's car. Defendant drove the vehicle with Turner seated in the front passenger seat. She later told the police "the last thing I remember, . . . he was like 'drive my truck to the next place. We need to go.' "

Defendant apparently pulled the vehicle out of the parking lot and drove it along a public street for slightly over a mile passing through several traffic-light-controlled intersections. There she made a left turn onto the Highway 241 tollroad. According to the evidence, she drove northbound on the tollroad for over 10 miles at an average speed of 94 miles per hour, before transitioning onto the westbound lanes of the 91 Freeway. Proceeding along the freeway at over 90 miles per hour, weaving between the No. 4 and No. 5 lanes, the car clipped the left rear corner of a tractor-trailer, then spun around and slammed into a nearby sound wall. An eyewitness testified he saw the car's brake lights illuminate just before the collision.

Defendant climbed out of the vehicle through its sunroof. Turner was unresponsive and pinned in the front passenger seat. Paramedics eventually extricated Turner from the car and took him to a nearby hospital where he was pronounced dead.

Defendant smelled of alcohol, slurred her speech, had bloodshot and watery eyes, and displayed dramatic changes in emotion. She admitted drinking quite a bit of alcohol and feeling its effects. Defendant told a truckdriver who stopped to provide assistance that she was not driving the car and repeated this claim when later questioned by a paramedic and a California Highway Patrol officer. Asked by the officer where she sat in the car, defendant replied,

"The right front seat guaranteed." But when he inquired about who was driving she did not respond. Defendant correctly answered questions concerning person and situation, except she thought she was in Mission Viejo.

An ambulance took defendant to a hospital. Later, when discussing the booking process with a patrol officer, defendant asked, "So how is the passenger doing?" She then stopped, and inquired about the condition of the "man in the car."

A blood sample was taken from defendant one and one-half hours after the accident. A test of it indicated her blood-alcohol level was 0.218 percent. A forensic expert estimated she had a blood-alcohol level of 0.23 percent at the time of the accident.

Defendant testified, acknowledging she had consumed two and one-half beers and a shot of a drink called Jägermeister before her mother drove her to the restaurant for dinner. She also admitted drinking champagne, a couple of shots of a drink called "chocolate cake," and red wine at the restaurant.

She recalled Turner telling her some jokes and paying for their meals and drinks, but denied being able to recall driving the vehicle. Although defendant remembered being involved in the accident, she denied any recollection of getting out of the car, receiving treatment from the paramedics, or being questioned at the accident scene. Defendant testified she awoke at the hospital crying, asking "Where is Scott?," and being told by a police officer that he was dead.

The defense also called Dr. Max A. Schneider, a physician specializing in addiction medicine. Schneider explained the effects of alcohol consumption on the brain and the concept of a blackout. He interviewed defendant twice, in November 2007 and in July 2009. Employing a methodology he described as "ask[ing] similar questions in different ways to try and determine whether she was fibbing or giving . . . a truthful answer," Schneider concluded defendant suffered a complete blackout on the night of the accident. On cross-examination, Schneider acknowledged he did not attempt to record either interview, make a list of the questions he asked defendant, or memorialize all of her answers to the questions. He admitted his notes concerning the two interviews contained inconsistencies. He also did not employ standardized tests used by psychiatrists to determine whether a person is being truthful or conduct any other medical tests on defendant.

## DISCUSSION

1. *The Court's Refusal to Give CALCRIM No. 626*

   a. *Introduction*

The trial court gave the jury the standard instructions on the presumption of innocence, the People's burden to "prove . . . defendant guilty beyond a reasonable doubt," that the crimes "charged . . . require[] proof of [the] union or joint operation of act and wrongful intent," and the prosecution's burden included proving "not only . . . that . . . defendant did the acts charged, but also that she acted with a particular intent and/or mental state." On count 1, it read CALCRIM No. 520, defining the crime of murder and explaining the concept of malice.

Defendant asked the court to also give CALCRIM No. 626 as to the murder charge. In part, this instruction states: "Voluntary intoxication may cause a person to be unconscious of his or her actions. A very intoxicated person may still be capable of physical movement but may not be aware of his or her actions or the nature of those actions. [¶] . . . [¶] When a person voluntarily causes his or her own intoxication to the point of unconsciousness, the person assumes the risk that while unconscious he or she will commit acts inherently dangerous to human life. If someone dies as a result of the actions of a person who was unconscious due to voluntary intoxication, then the killing is involuntary manslaughter. [¶] Involuntary manslaughter has been proved if you find beyond a reasonable doubt that: [¶] 1. The defendant killed without legal justification or excuse; [¶] 2. The defendant did not act with the intent to kill; [¶] 3. The defendant did not act with a conscious disregard for human life; AND [¶] 4. As a result of voluntary intoxication, the defendant was not conscious of (his/her) actions or the nature of those actions." The trial court rejected the request.

Defendant attacks this ruling. She claims the evidence reflects she suffered an alcohol-induced blackout that resulted in her becoming legally unconscious before driving Turner's car and she did not regain consciousness until waking up at the hospital. According to defendant, the failure to give CALCRIM No. 626 violated her right to have the jury decide every material issue of fact and her constitutional rights to due process and equal protection. We conclude these arguments lack merit.

   b. *Analysis*

In *People v. Watson* (1981) 30 Cal.3d 290 [179 Cal.Rptr. 43, 637 P.2d 279], the Supreme Court held a person, with knowledge of the hazards of

drunk driving, who drives a vehicle while intoxicated and proximately causes the death of another may be convicted of second degree murder under an implied malice theory. (*Id.* at pp. 300–301; see also *People v. Ferguson* (2011) 194 Cal.App.4th 1070, 1080 [124 Cal.Rptr.3d 182].) "Malice is implied . . . when a killing results from an intentional act, the natural consequences of which are dangerous to human life, and the act is deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [Citation.]" (*People v. Cook* (2006) 39 Cal.4th 566, 596 [47 Cal.Rptr.3d 22, 139 P.3d 492].)

The prosecution presented evidence defendant suffered three prior drunk driving convictions, resulting in her participation in counseling programs for drunk drivers and being repeatedly advised concerning the hazards of driving while under the influence of alcohol. Nonetheless, on the night of the accident, after consuming a substantial amount of alcohol, she drove Turner's car at an excessively high speed and, while making an illegal lane change, collided with the rear of a truck, causing Turner's death. As mentioned, the court instructed the jury on the prosecution's obligation to prove defendant committed this act with the mental state of implied malice.

■ Defendant claims the trial court erred by not allowing the jury to determine whether her drinking caused her to become unconscious and thereby reduce her criminal culpability on count 1 to involuntary manslaughter. She cites section 26, subdivision Four, and the rule that while " '[u]nconsciousness is ordinarily a complete defense to a charge of criminal homicide . . . [i]f the state of unconsciousness results from intoxication voluntarily induced, . . . it is not a complete defense. (Pen. Code, § 22.)' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 423 [79 Cal.Rptr.2d 408, 966 P.2d 442], citation omitted.) Consequently, "[w]hen a person renders himself or herself unconscious through voluntary intoxication and kills in that state, the killing is attributed to his or her negligence in self-intoxicating to that point, and is treated as involuntary manslaughter." (*Ibid.*) We find this rule inapplicable to this case.

■ First, we agree with the Attorney General's assertion the record did not warrant giving the proposed instruction. Involuntary manslaughter is generally considered a lesser included offense of the crime of murder (*People v. Ochoa, supra,* 19 Cal.4th at p. 422), and a trial court's duty to instruct on it arises " 'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation] . . .' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094]). "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is

'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed. [Citations.]" (*Id.* at p. 162.) In applying this standard "a court determines only its bare legal sufficiency, not its weight" (*id.* at p. 177), and "should not evaluate the credibility of witnesses . . ." (*id.* at p. 162).

■ "To constitute a defense, unconsciousness need not rise to the level of coma or inability to walk or perform manual movements; it can exist 'where the subject physically acts but is not, at the time, conscious of acting.' [Citation.]" (*People v. Halvorsen* (2007) 42 Cal.4th 379, 417 [64 Cal.Rptr.3d 721, 165 P.3d 512]; see *People v. Ochoa, supra,* 19 Cal.4th at pp. 423–424.) The evidence of defendant's operation of Turner's car, plus the observations of witnesses who interacted with her after the accident, reflect defendant engaged in more than mere physical movement, thereby dispelling any reliance on an unconsciousness theory. She not only entered the car, but put on the driver's side seatbelt and started the vehicle. Defendant then pulled the vehicle out of a parking stall, maneuvered it onto a public street, drove along that roadway for over a mile, through several controlled intersections, before negotiating a turn onto the tollroad. After operating the car accident free at high speed along the winding and curving tollroad for approximately 10 miles, she transitioned onto the freeway before running into the back of the slower moving tractor-trailer. An eyewitness saw the car's brake lights illuminate just before the collision. As noted, immediately after the accident, defendant climbed out of the car through the sunroof, answered questions, and repeatedly insisted she was not driving the car when the accident occurred. "The complicated and purposive nature of h[er] conduct" "makes clear that [s]he did not lack awareness of h[er] actions during the course of the offense[]" (*People v. Halvorsen, supra,* 42 Cal.4th at p. 418).

Defendant relies on her own testimony where she denied any recollection of driving Turner's car and Schneider's opinion, based on his interviews with her, that she suffered an alcohol-related blackout on the night of the accident. A "[d]efendant's professed inability to recall the event, without more, [i]s insufficient to warrant an unconsciousness instruction. [Citations.]" (*People v. Rogers* (2006) 39 Cal.4th 826, 888 [48 Cal.Rptr.3d 1, 141 P.3d 135]; see also *People v. Heffington* (1973) 32 Cal.App.3d 1, 10 [107 Cal.Rptr. 859] [while "a reviewing court" must "assume that [the defendant's] selective recollection was natural, not feigned" it is "far short of a claim or description of . . . coexistent unconsciousness"].) Schneider's testimony adds little weight since he acknowledged his opinion was "bas[ed] . . . on the statements of . . . defendant" during two interviews without the use of standardized psychiatric tests or other examination of her.

This case is distinguishable from the ones cited by defendant such as *People v. Wilson* (1967) 66 Cal.2d 749 [59 Cal.Rptr. 156, 427 P.2d 820] and *People v. Bridgehouse* (1956) 47 Cal.2d 406 [303 P.2d 1018]. In each of those cases, the defendant's actions after the crime were consistent with one who was unconscious. "[I]n both *Wilson* and *Bridgehouse*, the defendants testified to a mental state consistent with unconsciousness and with prior statements to police." (*People v. Halvorsen, supra*, 42 Cal.4th at p. 418.) Here, by contrast, after the accident, defendant exited the car on her own and immediately announced she was not driving the car. Once paramedics and law enforcement officials arrived, she not only responded to their questions, but repeated the claim she was only a passenger.

Second, even if defendant presented sufficient evidence of unconsciousness, we agree with the Attorney General's alternative claim that the 1995 amendments to section 22 preclude a defendant from relying on his or her unconsciousness caused by voluntary intoxication as a defense to a charge of implied malice murder. Contrary to defendant's suggestion, section 26, subdivision Four, which declares "[p]ersons who commit[] the act charged without being conscious thereof" are incapable of committing a crime, is not at issue here. "Unconsciousness caused by voluntary intoxication is . . . governed by section 22 . . . ." (*People v. Walker* (1993) 14 Cal.App.4th 1615, 1621 [18 Cal.Rptr.2d 431], fn. omitted; see *People v. Chaffey* (1994) 25 Cal.App.4th 852, 855 [30 Cal.Rptr.2d 757].)

The first sentence of section 22, subdivision (a) declares, "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition." Case law has recognized this statute "is part of California's history of limiting the exculpatory effect of voluntary intoxication" (*People v. Timms* (2007) 151 Cal.App.4th 1292, 1300 [60 Cal.Rptr.3d 677]), and the foregoing sentence "means that, with respect to the same conduct, an intoxicated person shoulders the same criminal responsibility as a sober person" (*ibid.*). In addition, the statute bars the admission of "[e]vidence of voluntary intoxication . . . to negate the capacity to form any mental states for the crimes charged" (§ 22, subd. (a)), and limits the admissibility of evidence of "whether or not the defendant actually formed" certain specified mental states (§ 22, subd. (b)).

Prior to 1996, subdivision (b) of section 22 stated proof of voluntary intoxication was admissible "on the issue of whether or not the defendant actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged." (Stats. 1982, ch. 893, § 2, pp. 3317–3318.) In *People v. Whitfield* (1994) 7 Cal.4th 437 [27 Cal.Rptr.2d 858, 868 P.2d 272], superseded in part by statute as set out in *People v. Reyes* (1997) 52 Cal.App.4th 975, 984, footnote 6 [61 Cal.Rptr.2d

39], the court held this statute "was not intended, in murder prosecutions, to preclude consideration of evidence of voluntary intoxication on the issue whether a defendant harbored malice aforethought, whether the prosecution proceeds on a theory that malice was express or implied." (*Whitfield*, at p. 451.)

The next year, the Legislature amended section 22, subdivision (b) so that it now declares "[e]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." Subsequent cases have recognized "the effect of the 1995 amendment to section 22[, subdivision (b)] was to preclude evidence of voluntary intoxication to negate implied malice . . . ." (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1114 [93 Cal.Rptr.2d 433]; see also *People v. Turk* (2008) 164 Cal.App.4th 1361, 1375 [80 Cal.Rptr.3d 473] ["The legislative history . . . unequivocally indicates that the Legislature intended to legislatively supersede *Whitfield*, and make voluntary intoxication inadmissible to negate implied malice in cases in which a defendant is charged with murder . . . ."].) The Supreme Court has also recognized, in dicta, that after this amendment, "depending on the facts, it now appears that defendant's voluntary intoxication, even to the point of actual unconsciousness, would not prevent his conviction of second degree murder on an implied malice theory . . . ." (*People v. Boyer* (2006) 38 Cal.4th 412, 469, fn. 40 [42 Cal.Rptr.3d 677, 133 P.3d 581].)

While defendant seeks to rely on her purported unconsciousness to reduce her criminal culpability, her alleged blackout admittedly resulted from self-intoxication. In *People v. Timms, supra,* 151 Cal.App.4th 1292, the appellate court recognized one of the reasons for amending section 22, subdivision (b) in 1995 was that "the Legislature deemed it confusing, in a vehicular homicide case, to allow evidence of voluntary intoxication to aggravate as well as to mitigate the offense." (151 Cal.App.4th at p. 1302.) This confusion is no less true where a defendant relies on his or her voluntary intoxication to assert a claim of unconsciousness.

Defendant relies on a portion of the *Whitfield* decision where the Supreme Court recognized CALJIC No. 8.47, which is similar to CALCRIM No. 626, was "a correct statement of law in the abstract" (*People v. Whitfield, supra,* 7 Cal.4th at p. 454), but inapplicable because "[t]he circumstance that a defendant, when a fatal traffic collision occurs, is unconscious as a result of voluntary intoxication, does not preclude a finding that the defendant harbored malice, because malice may have been formed prior to that time" (*ibid.*). She argues this appeal is distinguishable because while the defendant in "*Whitfield* drank knowing that he would be driving," she "drank knowing that she would not be driving."

■ The problem with this argument is that it is based on the premise voluntary intoxication can still negate a finding of implied malice. In *Turk*, the appellate court declared: "It is no longer proper to instruct a jury . . . that 'when a defendant, as a result of voluntary intoxication, kills another human being without premeditation and deliberation and/or without intent to kill (i.e. without express malice), the resultant crime is involuntary manslaughter.' This instruction is incorrect because a defendant who unlawfully kills without express malice due to voluntary intoxication can still act with implied malice, which voluntary intoxication cannot negate, in the wake of the 1995 amendment to section 22, subdivision (b). To the extent that a defendant who is voluntarily intoxicated unlawfully kills with implied malice, the defendant would be guilty of second degree murder." (*People v. Turk, supra*, 164 Cal.App.4th at pp. 1376–1377, fn. omitted.) No reason exists to carve out an exception where a person drinks so much as to render him or her unconscious.

Defendant contends the foregoing interpretation of section 22, subdivision (b) violates her constitutional rights to due process and equal protection. We disagree.

■ *Montana v. Egelhoff* (1996) 518 U.S. 37 [135 L.Ed.2d 361, 116 S.Ct. 2013] rejected the claim of a defendant convicted of purposely or knowingly causing the death of a person that he was denied federal due process by a state law that barred consideration of voluntary intoxication " 'in determining the existence of a mental state which is an element of [a criminal] offense.' " (*Id.* at p. 40.) Four justices concurred in an opinion holding the rule that "intoxication may be considered on the question of intent . . . was [not] so deeply rooted . . . as to be a fundamental principle which th[e Fourteenth] Amendment [has] enshrined." (*Id.* at p. 48.) Justice Ginsburg concurred in upholding the statute. Declaring " '[a] state legislature certainly has the authority to identify the elements of the offenses it wishes to punish,' . . . and to exclude evidence irrelevant to the crime it has defined" (*id.* at p. 57 (conc. opn. of Ginsburg, J.), citation omitted), she distinguished between invalid laws "designed to keep out 'relevant, exculpatory evidence' " (*ibid.* (conc. opn. of Ginsburg, J.)) and valid laws that merely "redefin[e] . . . the mental-state element of the offense" (*ibid.* (conc. opn. of Ginsburg, J.)), and concluded the Montana statute fell into the latter category (*id.* at pp. 57–59 (conc. opn. of Ginsburg, J.)).

■ California appellate courts have followed *Egelhoff* in upholding the current version of section 22 against due process attacks. *People v. Martin, supra*, 78 Cal.App.4th 1107 stated, "The 1995 amendment to section 22 results from a legislative determination that, for reasons of public policy, evidence of voluntary intoxication to negate culpability shall be strictly

limited," and "nothing in the enactment . . . deprives a defendant of the ability to present a defense or relieves the People of their burden to prove every element of the crime charged beyond a reasonable doubt . . . ." (*Id.* at p. 1117.) *People v. Timms, supra,* 151 Cal.App.4th 1292 declared, "Like the Montana statute, the California Legislature could also exclude evidence of voluntary intoxication in determination of the requisite mental state. [¶] . . . In short, voluntary intoxication is irrelevant to proof of the mental state of implied malice or conscious disregard. Therefore, it does not lessen the prosecution's burden of proof or prevent a defendant from presenting all relevant defensive evidence." (*Id.* at pp. 1300–1301.) No basis exists to hold this reasoning dissolves merely because a defendant's voluntary intoxication renders him or her unconscious.

■ Defendant further argues section 22 violates her right to equal protection of the law, claiming it "purports to eliminate voluntary intoxication as a defense only in implied malice circumstances but retains it for express malice." *Timms* rejected an equal protection challenge based on the same premise. Declaring "[a] defendant does not have a fundamental interest in the specific term of imprisonment or the definition or designation of a particular crime" (*People v. Timms, supra,* 151 Cal.App.4th at p. 1302), the court held the twin goals of avoiding confusion arising from the simultaneous use of intoxication evidence to both aggravate and mitigate criminal culpability and "bolster[ing] the deterrent effect of section 22 by underscoring the long-standing principle . . . that voluntary intoxication is no excuse for crime" (*ibid.*), provided "a rational basis for not allowing voluntary intoxication to serve as a defense in an implied malice case" (*ibid.*). Again, we find this reasoning equally applicable in this case.

Thus, we conclude the trial court properly refused to give CALCRIM No. 626 in this case.

## 2. *Validity of Defendant's Gross Vehicular Manslaughter Conviction*

### a. *Background*

On count 2, defendant submitted four proposed instructions. Two of them directed the jury to apply the standard of "a reasonable person in the defendant's position" in deciding if she "acted with gross negligence" and was "aware of the risk involved . . . ." A third instruction sought to have the jury "consider all relevant circumstances" when deciding if defendant "acted with a conscious indifference to the consequence . . . ." The final proposed instruction stated the jury "may consider evidence . . . of defendant's voluntary intoxication . . . in deciding whether the [*sic*: she] acted with a conscious indifference to the consequences." (Capitalization omitted.) After a

discussion, the court amended CALCRIM No. 590's explanation of gross negligence to add the phrase "considering all relevant circumstances," but otherwise rejected defendant's proposed instructions.

Citing earlier case law allowing unconsciousness resulting from voluntary intoxication to reduce murder to involuntary manslaughter, which defined necessary mental state as " 'criminal negligence' " (*People v. Ochoa, supra*, 19 Cal.4th at p. 423), defendant claims "she should be able to defend" against the gross vehicular manslaughter charge because "her mental state of unconsciousness cannot rise to the level of gross negligence" required for a conviction on that offense (see CALCRIM No. 590). Consequently, defendant again asserts the court's "failure to instruct the jury to consider whether or not [she] was unconscious at the time of driving deprived [her]" of the rights to due process, equal protection, and the "right to have the jury determine every material issue of fact" relating to count 2.

### b. *Analysis*

This argument is flawed for two reasons. First, as the Attorney General notes, while defendant submitted several proposed instructions relating to the gross vehicular manslaughter charge, she "did not request any pinpoint instruction, or other instruction as to 'unconsciousness' pertaining to count two." (See *People v. Lang* (1989) 49 Cal.3d 991, 1024 [264 Cal.Rptr. 386, 782 P.2d 627].) Of course, the failure to do so was likely because gross negligence is not one of the mental states listed in section 22, subdivision (b) on which "[e]vidence of voluntary intoxication is admissible . . . ."

This fact leads to the second reason why defendant's argument lacks merit. As discussed above, since voluntary intoxication resulting in unconsciousness is no longer a valid basis for reducing a murder based on implied malice to involuntary manslaughter, the premise of defendant's current argument is incorrect. Therefore, even had she requested an appropriate instruction the court would not have erred by refusing to give it in this case.

### 3. *The Multiple Convictions for Murder and Gross Vehicular Manslaughter*

Although acknowledging the Supreme Court has ruled to the contrary, defendant claims she could not be convicted of both murder and gross vehicular manslaughter while intoxicated for the same act.

As defendant recognizes, in *People v. Sanchez* (2001) 24 Cal.4th 983 [103 Cal.Rptr.2d 698, 16 P.3d 118], disapproved on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228–1229 [45 Cal.Rptr.3d 353, 137 P.3d 184], the Supreme Court held gross vehicular manslaughter while

intoxicated is not a lesser included offense of murder. "Although as a factual matter, a murder may be carried out by means of a vehicle and by an intoxicated driver, in the abstract it obviously is possible to commit a murder without committing gross vehicular manslaughter while intoxicated. Accordingly, dual conviction in the present case was appropriate . . . ." (*People v. Sanchez, supra*, 24 Cal.4th at p. 988.)

Under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937], we are bound to follow *Sanchez*'s holding in this case. (*Id.* at p. 455.) Thus, defendant's extensive reliance on the dissenting opinion in *Sanchez* is unavailing.

### 4. The Fine Imposed for Defendant's Gross Vehicular Manslaughter Conviction

At sentencing, the trial court imposed a prison sentence of 15 years to life on defendant on both the murder and gross vehicular manslaughter while intoxicated charges, but under section 654, subdivision (a) stayed the term imposed on count 2. In addition, the court imposed a $6,000 restitution fine, which it calculated multiplying the 15-year prison term by $200 and then multiplying that product by two pursuant to section 1202.4, subdivision (b)(2).

Defendant argues the portion of the fine imposed for her conviction on count 2 is erroneous since it also constitutes a form of punishment subject to section 654, subdivision (a). The Attorney General concedes this point has merit and requests we reduce defendant's fine to $3,000.

Under section 1202.4, "where a person is convicted of a crime, the court shall impose a separate and additional restitution fine . . . ," and "[i]n setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).) Case law has recognized restitution fines, including a fine imposed under section 1202.4, subdivision (b) constitute a form of punishment. (*People v. Hanson* (2000) 23 Cal.4th 355, 361 [97 Cal.Rptr.2d 58, 1 P.3d 650]; *People v. Le* (2006) 136 Cal.App.4th 925, 933 [39 Cal.Rptr.3d 146].) Therefore, the portion of the fine based on defendant's gross vehicular manslaughter while intoxicated conviction was error.

### DISPOSITION

The judgment is modified to impose a $3,000 restitution fine for appellant's conviction of gross vehicular manslaughter while intoxicated, but shall

order the fine stayed under section 654, subdivision (a). The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting the change and send it to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

Moore, J., and Ikola, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 1, 2012, S198063. Kennard, J., was of the opinion that the petition should be granted.