Filed 9/4/13  P. v. Tena CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SALVADOR MEDINA TENA,<br><br>    Defendant and Appellant. | 2d Crim. No. B241670<br>(Super. Ct. No. 2010005964)<br>(Ventura County) |

Salvador Medina Tena appeals a judgment following conviction of second degree murder, with a finding of personal use of a deadly weapon during commission of the crime.  (Pen. Code, §§ 187, subd. (a), 189, 12022, subd. (b)(1).)[1]  We affirm.

*FACTS AND PROCEDURAL HISTORY*

In the late afternoon of February 16, 2010, Tena sold videotapes outside Santitos restaurant in Oxnard.  Javier Orozco Rodriguez, owner of the restaurant, knew Tena and purchased several videotapes from him that day.  Tena appeared to be intoxicated and had a "little bit [of] trouble walking . . . talking."  He informed Rodriguez that he "had problems" with Candido Monge, an elderly homeless man who frequently patronized the restaurant.  Tena described Monge as "a rat" and stated:  "I am only telling you what will come to pass."

---

[1] All further statutory references are to the Penal Code unless otherwise stated. References to section 12022 are to the version in effect prior to January 1, 2012.

While Tena and Rodriguez were conversing, Monge entered the restaurant and ordered dinner. Rodriguez stated falsely that Monge was his uncle, and asked Tena not to hurt Monge. Tena did not respond and walked away.

Monge ate dinner and left the restaurant. Approximately 15 minutes later, he returned and shouted that he had been stabbed. Monge removed his jacket, revealing a knife handle protruding from his abdomen. He seized the handle, extricated the knife, and placed it on a table. The knife was a three-to-four inch folding knife with a serrated edge.

Javier Orozco, the restaurant owner's son, asked Monge who stabbed him. Monge replied "Chava, the one-eyed guy." Tena, known by the nickname "Chava," was blind in one eye. Orozco telephoned for medical and police assistance. In response to questions from the police dispatcher, Orozco stated that Chava stabbed Monge because Monge was a "snitch[]."

Oxnard Police Officer Crystal Walker arrived at the restaurant and accompanied Monge to the hospital. In a recorded conversation, Monge stated that Tena was "hiding" behind a water dispenser outside a neighboring market and "came and just stabbed him." Monge stated that they had not argued and that Tena stabbed him "for nothing." At trial, the prosecutor played the recording of the conversation.

Despite medical treatment, Monge died from abdominal hemorrhaging as a result of the stabbing. Laboratory testing revealed that he had a 0.19 blood alcohol content when he arrived at the hospital.

Police officers obtained videotapes from surveillance cameras near the water dispensers. The videotapes revealed Tena standing by the water dispensers, removing a light-colored object from his waistband, and transferring the object to his right hand. Tena turned the object in the palm of his hand to "secret[] [it] from view." He then walked outside the range of the cameras, but reappeared shortly and walked briskly away. At trial, the prosecutor played a compilation of the surveillance videotapes.

The day following the stabbing, police officers found Tena near a rescue mission. He resisted an order to stop and was forcibly detained.

2

Following advisement and waiver of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Tena initially denied that he knew Monge and stated that he did not recall the stabbing. Later, Tena stated that he had been drunk and that Monge had offended him. He admitted that he "made a mistake," and stated "judge me now, whatever has to happen." Tena repeated that he did not remember the stabbing because he had been intoxicated. He recalled an argument with Monge prior to the stabbing, however, and recalled selling videotapes to Rodriguez. Tena also stated that he "gave [his] life so that others could benefit because this man [Monge] did offend a lot of people." At trial, the prosecutor played the recorded police interview.

The jury acquitted Tena of first degree murder, but convicted him of second degree murder. (§§ 187, subd. (a), 189.) It also found that he personally used a deadly weapon, a knife. (§ 12022, subd. (b)(1).) The trial court sentenced Tena to a prison term of 16 years to life, consisting of 15 years to life for second degree murder, and one year for personal deadly weapon use. The court imposed a $1,000 restitution fine, a $1,000 parole revocation restitution fine (stayed), a $40 court security assessment, and a $30 criminal conviction assessment, and ordered restitution to the victim's family. (§§ 1202.4, subd. (b), 1202.45, 1465.8; Gov. Code, § 70373.) It also awarded Tena 811 days of presentence custody credit.

Tena appeals and contends that the trial court erred by not instructing concerning involuntary manslaughter and unconsciousness. (CALCRIM No. 626 ["Voluntary Intoxication Causing Unconsciousness: Effects on Homicide Crimes (Pen. Code, § 22)"].)

In his reply brief, Tena abandons an argument that the trial court erred by refusing an instruction regarding voluntary manslaughter based upon a theory of a killing committed without malice while committing an assault with a deadly weapon. As the parties acknowledge, in *People v. Bryant* (2013) 56 Cal.4th 959, our Supreme Court recently rejected this theory. (*Id.* at p. 970 [defendant who kills without malice in the commission of an inherently dangerous assaultive felony has not committed voluntary

3

manslaughter because voluntary manslaughter requires either an intent to kill or a conscious disregard for life].)

*DISCUSSION*

Tena argues that the trial court erred by refusing to instruct regarding voluntary intoxication, unconsciousness, and involuntary manslaughter. (§ 192, subd. (b); *People v. Ochoa* (1998) 19 Cal.4th 353, 423-424 [defendant who kills while unconscious due to voluntary intoxication has committed involuntary manslaughter].) He asserts that substantial evidence exists that he acted in an unconscious state due to voluntary intoxication. Tena points to evidence that he was intoxicated before the stabbing and he repeatedly informed the interviewing police officers that he did not remember committing the crime because he was too intoxicated. He claims the error is prejudicial, reversible, and denies him due process of law and the right to a jury determination of every material trial issue.[2]

At trial, Tena requested an instruction regarding a killing committed while acting in an unconscious state due to voluntary intoxication. (CALCRIM No. 626.) After argument regarding the instruction, the trial court refused to so instruct and stated that Tena's acts, including "rapidly leaving the [crime] scene," were "inconsistent with being unconscious and not knowing what's going on."

CALCRIM No. 626 provides: "Voluntary intoxication may cause a person to be unconscious of his or her actions. A very intoxicated person may still be capable of physical movement but may not be aware of his or her actions or the nature of those actions. [¶] . . . [¶] When a person voluntarily causes his or her own intoxication to the point of unconsciousness, the person assumes the risk that while unconscious he or she will commit acts inherently dangerous to human life. If someone dies as a result of the

---

[2] In his appellate briefs, Tena repeatedly refers to three days of jury deliberation. In fact, the jury received the matter late in the day of the first day of deliberations, quickly adjourned for the day, deliberated the entire day the following day, and reached a verdict at approximately 11:00 a.m. the next day.

actions of a person who was unconscious due to voluntary intoxication, then the killing is involuntary manslaughter. . . ."

For several reasons, the trial court did not err by refusing the unconsciousness instruction.

A trial court must instruct regarding involuntary manslaughter based upon unconsciousness whenever there is sufficient evidence that the defendant was unconscious due to involuntary intoxication. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 418; *People v. Turk* (2008) 164 Cal.App.4th 1361, 1371-1372; but see *People v. Boyer* (2006) 38 Cal.4th 412, 469, fn. 40 [Dictum that in view of statutory amendments, voluntary intoxication to the point of unconsciousness would not prevent conviction of murder based upon an implied malice theory].) "Due process requires that the jury be instructed on a lesser included offense *only* when the evidence warrants such an instruction." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1145.)

Here the evidence is insufficient to support instruction with CALCRIM No. 626. No expert or other witness testified that Tena was so "'grossly intoxicated'" as to be unconscious when he committed the killing. (*People v. Turk*, *supra*, 164 Cal.App.4th 1361, 1379.) There also is no evidence of Tena's blood-alcohol content or the extent of his habituation to alcohol. (*People v. Rogers* (2006) 39 Cal.4th 826, 887.) Evidence that Tena was intoxicated prior to the killing (he had a "little bit [of] trouble walking . . . talking") and that he could not remember the crime is insufficient to warrant an unconsciousness instruction. (*People v. Halvorsen*, *supra*, 42 Cal.4th 379, 418 [expert testimony that the defendant's blood-alcohol content might have approached 0.20 at the time of the shootings and that defendant "habitually drank to excess with resultant memory losses" did not constitute substantial evidence warranting an involuntary manslaughter instruction premised on unconsciousness]; *Rogers*, at p. 888 ["Defendant's professed inability to recall the event, without more, was insufficient to warrant an unconsciousness instruction"].) Moreover, Tena recalled selling videotapes outside the restaurant and having a conversation with Monge prior to the stabbing. The surveillance videotape compilation also depicts Tena handling and concealing the knife and walking

5

away briskly after he stabbed Monge. The evidence does not permit a reasonable inference that Tena's voluntary intoxication rendered him unconscious, i.e., where he physically acted but was not conscious of acting. (*Halvorsen*, at p. 417; *People v. Carlson* (2011) 200 Cal.App.4th 695, 704.)

Sufficiency of evidence to support the instruction aside, 1995 statutory amendments to section 22 (renumbered section 29.4 effective Jan. 1, 2013) preclude a defendant from relying on his unconsciousness caused by voluntary intoxication as a defense to *implied malice murder*. (*People v. Carlson*, *supra*, 200 Cal.App.4th 695, 705.) Section 29.4, subdivision (b) permits evidence of voluntary intoxication as relevant to whether the defendant actually formed a specific intent or, when charged with murder, whether he premeditated, deliberated, or harbored *express* malice. (*Carlson*, at p. 706.) A defendant who unlawfully kills without express malice due to voluntary intoxication can still act with implied malice, which voluntary intoxication cannot negate. (§ 29.4, subd. (b).) To the extent that a defendant who is voluntarily intoxicated unlawfully kills with implied malice, he would be guilty of second degree murder. (*Carlson*, at p. 707.) "No reason exists to carve out an exception where a person drinks so much as to render him or her unconscious." (*Ibid.*)

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

6

Charles W. Campbell, Judge

Superior Court County of Ventura

_____

Linda C. Rush, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Kimberley J. Baker-Guillemet, Deputy Attorney General, for Plaintiff and Respondent.