Filed 3/6/15  P. v. Coleman CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B254073 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA098859) |
| v. | |
| BRIAN VANCE COLEMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Mike Camacho, Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Brendan Sullivan, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant and appellant Brian Vance Coleman (defendant) was convicted of second degree murder (Pen. Code, § 187, subd. (a)[1]) (count 1); gross vehicular manslaughter (§ 192, subd. (c)(1)) (count 2); evading an officer causing death (§ 2800.3, subd. (b)) (count 4); leaving the scene of an accident (§ 20001, subd. (a)) (count 5); and unlawful taking of a vehicle with a prior (§ 666.5) (count 6). On appeal, defendant contends that former section 22 violated his constitutional due process and equal protection rights; and that imposition of sentence on count 6 for the unlawful taking of a motor vehicle should have been stayed pursuant to section 654. We affirm the judgment.

# BACKGROUND

## A. Factual Background

### 1. Prosecution Evidence

On July 28, 2012, Kimberly McWilliam parked her Ford F-350 truck on the street in a residential area. On July 29, 2012, at about 6:30 a.m., McWilliam noticed that her truck was missing, and she called the police department and reported that it been stolen. McWilliam did not know defendant and did not give him permission to take her truck.

On July 29, 2012, Claremont Police Officer Christopher Casas received a dispatch notification of a stolen vehicle traveling south on Towne Avenue. Officer Casas drove to the area and activated the recording camera mounted on the dashboard of his marked patrol vehicle. The video recording was played before the jury. Officer Casas traveled north on Towne Avenue, started to make a u-turn to go south on Towne Avenue, and the truck, later identified as being driven by defendant, went south on Towne Avenue past Officer Casas.

---

[1] All statutory citations are to the Penal Code unless otherwise noted.

After Officer Casas completed his u-turn, he stopped behind the truck as it was stopped for a red traffic light. Officer Casas noticed that defendant was looking at him from the truck's side mirrors.

Shortly after the traffic light turned green, the truck accelerated at a high rate of speed, changed lanes several time during which he "cut[] off" another vehicle, and drove through a red light. Officer Casas activated his lights and siren and initiated a pursuit of the truck. Defendant was driving approximately 70 to 75 miles per hour. Defendant then again changed lanes, and slowed abruptly to avoid colliding with vehicles stopped at an intersection. Thereafter, Officer Casas saw defendant enter an intersection, drive through the red light, and collide with a Toyota Camry. Officer Casas then saw defendant exit the truck; Officer Casas was able to see clearly defendant's face. Jesus Bugarin Mercado, the driver of the Toyota, died.

At approximately 5:45 p.m., Sharon and Glenn Wright were in their vehicle on Towne Avenue, stopped at a red traffic light at an intersection. As the Wrights were waiting for the traffic light to turn green, Mrs. Wright saw a truck drive pass them and enter the intersection through a red light. She heard a collision and saw the truck hit a tree. Mr. Wright witnessed the truck collide with a small car and then a tree. Both the Wrights saw the driver of the truck get out of it and flee.

Officer Casas pursued and ultimately detained defendant. The transcript of the audio portion of the video recording from Officer Casas's patrol vehicle consisted of three pages. As represented by the prosecutor, and based on what the transcript appears to indicate, Officer Casas's pursuit of the truck and ultimate apprehension of defendant took about 10 minutes and 24 seconds.

Upon apprehending defendant, Officer Casas was with defendant for about 15 minutes, and during that time asked him questions and observed him. According to Officer Casas, defendant appeared to be responsive, coherent, and aware of his surroundings.

On July 29, 2012, Emergency Physician Benjamin Squire treated defendant in the emergency room of Pomona Valley Hospital for injuries sustained in a car accident.

3

Defendant's urine tested positive for marijuana, methamphetamine, amphetamine, and opiates. Defendant's blood tested positive for amphetamine, methamphetamine, and morphine.

The level of methamphetamine in defendant's blood was, depending on what lower therapeutic range it is measured against, was either 12 or 60 times higher than therapeutic levels. Los Angeles County Sheriff's Department Criminalist Meena Shinn testified that methamphetamine affects an individual's mental state. An individual under the influence of methamphetamine believes time is elapsing faster than it is actually, is more willing to take risks, and may develop paranoia or hallucinations.

### 2. *Defendant's Evidence*

Defendant did not testify or present any evidence in his defense.

### B. **Procedural Background**

Following a trial, the jury found defendant guilty of second degree murder in violation of section 187, subdivision (a) (count 1); gross vehicular manslaughter in violation of section 192, subdivision (c)(1) (count 2); evading an officer causing death in violation of section 2800.3, subdivision (b) (count 4); leaving the scene of an accident in violation of section 20001, subdivision (a) (count 5); and unlawful taking of a vehicle with a prior in violation of section 666.5 (count 6). Defendant admitted all prior conviction allegations made by the District Attorney of Los Angeles County in the information filed against him.

The trial court sentenced defendant to state prison for a term of 46 years to life, consisting of a term of 15 years to life on count 1 for second degree murder, plus 15 years for the prior strike conviction; one year for each of the three prior prison terms pursuant to 667.5, subdivision (b); 5 years pursuant to 667, subdivision (a)(1); and 8 years on count 6 for unlawful taking of a vehicle with a prior conviction. The remaining counts were stayed pursuant to section 654.

4

The trial court awarded defendant custody credit, and ordered him to pay various fees, fines and penalties.  Defendant filed a timely notice of appeal.

## DISCUSSION

### A.      Former Section 22, Subdivision (b)

Defendant contends that former section 22, which precluded the admissibility of voluntary intoxication evidence as a basis for negating the mental state requirement of implied malice aforethought for second degree murder, violated his constitutional due process and equal protection rights.  We disagree.

#### 1.      *Applicable Law*

"'Murder is the unlawful killing of a human being . . . with malice aforethought.' [Citation.]  'Such malice may be express or implied.  It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature.' [Citation.]" (*People v. Prince* (2007) 40 Cal.4th 1179, 1265-1266.)  "Implied malice does not require an intent to kill.  Malice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses. [Citation.]" (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653; *People v. Taylor* (2010) 48 Cal.4th 574, 623-624; CALCRIM No. 520.)  The trial court here instructed the jury with a modified version of CALCRIM No. 520 only as to implied malice.

Former section 22, subdivision (b),[2] in effect at the time defendant committed the criminal acts, expressly prohibited consideration of voluntary intoxication evidence as a basis for negating the mental state requirement of implied malice aforethought.  It provided in part, "Evidence of voluntary intoxication is admissible *solely* on the issue of whether or not the defendant actually formed a required specific intent, or, when charged

---

[2]      Effective January 1, 2013, section 22, subdivision (b) was renumbered as section 29.4, subdivision (b).  (Stats. 2012, ch 162, § 119).

5

with murder, whether the defendant premeditated, deliberated, or harbored *express malice* aforethought." (Former § 22, subd. (b); italics added.)

Prior to 1995, section 22, subdivision (b), provided in part, "Evidence of voluntary intoxication is admissible on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored malice aforethought." (Stats. 1982, ch. 893, § 2.) Thus, prior to 1995, evidence of voluntary intoxication was admissible with regard to whether the defendant harbored malice aforethought, either express or implied. (*People v. Whitfield* (1994) 7 Cal.4th 437, 448-451.)

Thereafter, section 22, subdivision (b) was amended by adding the word "express" before the phrase "malice aforethought." (Stats 1995, ch. 793, § 1.) By this amendment the Legislature intended to preclude evidence of voluntary intoxication on the issue of the implied malice form of second degree murder. (*People v. Reyes* (1997) 52 Cal.App.4th 975, 984, fn. 6; Legis. Counsel's Dig., Sen. Bill No. 121 (1995-1996 Reg. Sess.), Summary Dig., p. 334.)

### 2. *Analysis*

#### a) Due Process

Defendant acknowledges that the California Supreme Court has rejected the argument that former section 22 violated his constitutional due process rights. In *People v. Sorden* (2005) 36 Cal.4th 65, the Supreme Court affirmed its prior opinion in *People v. Atkins* (2001) 25 Cal.4th 76, "reject[ing] the argument that exclusion of evidence, under section 22, of the defendant's voluntary intoxication 'violate[d] his due process rights by denying him the opportunity to prove he did not possess the required mental state (*Montana v. Egelhoff* (1996) 518 U.S. 37, 39-40, 56[].)' (*Atkins*, at p. 93.)" (*People v. Sorden*, *supra*, 36 Cal.4th at p. 72, fn. omitted; *People v. Carlson* (2011) 200 Cal.App.4th 695, 706-707 [citing *People v. Martin* (2000) 78 Cal.App.4th 1107 and *People v. Timms* (2007) 151 Cal.App.4th 1292, and stating, "California appellate courts have followed

[*People v.*] *Egelhoff*[, *supra,*] 518 U.S. 37] in upholding the current version of section 22 against due process attacks"].)

As defendant concedes, we are bound by our Supreme Court's holding in *People v. Sorden*, *supra*, 36 Cal.4th 65, and *People v. Atkins*, *supra*, 25 Cal.4th 76, both of which cases were decided after *Montana v. Egelhoff, supra,* 518 U.S. 37, upon which defendant relies. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Former section 22 did not violate defendant's due process rights.

### b) Equal Protection

It is a fundamental principle that, "[t]o succeed on [a] claim under the equal protection clause, [a defendant] first must show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. [Citation.]" (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 568.) A defendant charged with implied-malice second degree murder is not similarly situated to a defendant charged with express-malice second degree murder. For example, a defendant cannot be convicted of a conspiracy to commit murder based on implied malice. (*People v. Swain* (1996) 12 Cal.4th 593, 607 ["a conviction of conspiracy to commit murder requires a finding of intent to kill, and cannot be based on a theory of implied malice"].) A murderer who acts with intent to kill (express malice) is not similarly situated to a murderer who intentionally performs an act dangerous to human life with knowledge of the danger with conscious disregard for human life (implied malice).

Even if defendants convicted of express-malice murder and implied-malice murder are similarly situated, the prohibition on admitting evidence of voluntary intoxication for a charge of implied malice murder does not violate equal protection principles. *People v. Timms*, *supra*, 151 Cal.App.4th 1292 rejected the defendant's contention that former section 22 violates one's federal constitutional equal protection rights. The court held that former section 22 does not offend equal protection principles because there is a rational basis for not recognizing voluntary intoxication as a defense in an implied malice case, but allowing it as a defense for express malice. The court stated,

7

"Criminal classifications determining gradations of culpability do not implicate strict scrutiny.  [Citation.]  A defendant does not have a fundamental interest in the specific term of imprisonment or the definition or designation of a particular crime.  [Citation.]  'Application of the strict scrutiny standard in this context would be incompatible with the broad discretion the Legislature traditionally has been understood to exercise in defining crimes and specifying punishment.'  [Citation.]  [¶]  The Legislature had a rational basis for not allowing voluntary intoxication to serve as a defense in an implied malice case.  . . .  [T]he Legislature deemed it confusing, in a vehicular homicide case, to allow evidence of voluntary intoxication to aggravate as well as to mitigate the offense.  More fundamentally, by withholding voluntary intoxication as a defense to implied malice murder, the Legislature bolstered the deterrent effect of section 22 by underscoring the long-standing principle in California law that voluntary intoxication is no excuse for crime."  (*People v. Timms*, *supra*, 151 Cal.App.4th at p. 1302.)

Defendant contends that a strict scrutiny analysis should apply to his equal protection claim regarding section 22.  We disagree.

A statute is reviewed for a violation under the equal protection clause under different levels of scrutiny based upon the nature of the classification.  The most exacting scrutiny is applied to classifications based on race or national origin or classifications affecting fundamental rights. An intermediate level of scrutiny is applied to classifications based on sex or illegitimacy. The minimum standard for equal protection purposes is that the statutory classification must be rationally related to a legitimate governmental purpose.  (*People v. Wilkinson* (2004) 33 Cal.4th 821, 836-837.)

*People v. Carlson*, *supra*, 200 Cal.App.4th 695 agreed with the holding in *People v. Timms*, *supra*, 151 Cal.App.4th 1292, that the rational basis standard of review applied in rejecting the defendant's argument that section 22 "violates her right to equal protection of the law, claiming it 'purports to eliminate voluntary intoxication as a defense only in implied malice circumstances but retains it for express malice.'"  (*People v. Carlson, supra*, 200 Cal.App.4th at p. 708.)  The court stated, "*Timms* rejected an equal protection challenge based on the same premise.  Declaring '[a] defendant does not have

8

a fundamental interest in the specific term of imprisonment or the definition or designation of a particular crime' (*People v. Timms*, *supra*, 151 Cal.App.4th at p. 1302), the court held the twin goals of avoiding confusion arising from the simultaneous use of intoxication evidence to both aggravate and mitigate criminal culpability and 'bolster[ing] the deterrent effect of section 22 by underscoring the long-standing principle . . . that voluntary intoxication is no excuse for crime' (*ibid.*), provided 'a rational basis for not allowing voluntary intoxication to serve as a defense in an implied malice case' (*ibid.*). [W]e find this reasoning equally applicable in this case." (*People v. Carlson, supra*, 200 Cal.App.4th at p. 708.)

We agree with the reasoning in *People v. Carlson, supra*, 200 Cal.App.4th 695, and *People v. Timms*, *supra*, 151 Cal.App.4th 1292. Former section 22 did not violate defendant's equal protection rights.

## B. Section 654

Defendant contends that imposition of sentence on count 6—the unlawful taking of a motor vehicle—should have been stayed pursuant to section 654. We disagree.

### 1. Standard of Review

The applicability of section 654 is a question of fact for the trial court, which is vested with "broad latitude" in making its determination. (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1377-1378.) We review the trial court's determination for substantial evidence. We do so in a light most favorable to the respondent, and we presume the existence of every fact that reasonably could be deduced from the evidence. (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

### 2. Analysis

Section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case

9

shall the act or omission be punished under more than one provision." Section 654 prohibits only multiple punishment, not multiple convictions, for the same act. (*People v. Britt* (2004) 32 Cal.4th 944, 950; *People v. Harrison* (1989) 48 Cal.3d 321, 335.)

"'Section 654 has been applied not only where there was but one "act" in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.' [Citation.]" (*Neal v. State of California* (1960) 55 Cal.2d 11, 19, disapproved on other grounds as stated in *People v. Sanders* (2012) 55 Cal.4th 731, 742.)

To determine "'[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.] [C]ases have sometimes found separate objectives when the objectives were either (1) consecutive even if similar or (2) different even if simultaneous. In those cases, multiple punishment was permitted. [Citation.]" (*People v. Britt*, *supra*, 32 Cal.4th at pp. 951-952.)

Section 654 is applicable "in those instances wherein the accused entertained a principal objective to which other objectives, if any, were merely incidental." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. omitted.) "[I]f the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct. [Citations.]" (*People v. Perez* (1979) 23 Cal.3d 545, 551-552, fn. omitted.) "[A] course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon*, *supra*, 8 Cal.3d at p. 639, fn. 11.)

Defendant contends that imposition of sentence on his offense for the unlawful taking of a motor vehicle (count 6) should have been stayed pursuant to section 654

10

because before he fled from Officer Casas after unlawfully taking the vehicle, he never reached a place of temporary safety. Defendant argues, therefore, that the criminal act of unlawful taking the vehicle constituted an indivisible course of action that included the evasion and homicide offenses.

The record, however, supports a reasonable inference that defendant had reached a place of temporary safety before he fled from Officer Casas and collided with the Toyota. There is evidence that at about 6:30 a.m. on July 29, 2012, McWilliam called the police department and reported that her truck had been stolen. Approximately seven to eight hours later, defendant fled from Officer Casas, during which time defendant collided with the Toyota, killing Mercado, the driver of that vehicle.

The evidence is sufficient to support a reasonable inference that defendant had reached a place of temporary safety in the seven to eight hours before the pursuit by Officer Casas that culminated in defendant's fatal collision with the Toyota. Thus, for purposes of section 654, substantial evidence supports the trial court's implied finding that defendant harbored multiple criminal objectives and thus there are multiple acts or omissions.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.