Filed 2/10/22  P. v. Ritter CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRANDON CHRISTOPHER RITTER,<br><br>    Defendant and Appellant. | D078368<br><br><br>(Super. Ct. No. SWF1800017) |


APPEAL from a judgment of the Superior Court of Riverside County, Charles W. Campbell, Jr., Judge.  (Retired Judge of the Ventura Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Victoria H. Stafford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Arlene A. Sevidal and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

Brandon Christopher Ritter appeals a judgment convicting him of second degree murder and driving under the influence of a drug after he crashed his truck into a line of stopped cars, killing a driver of one of the cars and breaking the back of another. Ritter claims the trial court prejudicially erred by refusing to instruct the jury on unconsciousness and involuntary manslaughter and by precluding his counsel from arguing he was guilty of manslaughter rather than murder. He also claims the prosecutor committed misconduct by trivializing the reasonable doubt standard of proof during closing argument. We disagree with Ritter and affirm the judgment.

## I.

## BACKGROUND

### A.

### *Automobile Collision*

Ritter drove his truck at 70 to 80 miles per hour on a road where the speed limit was 45 miles per hour and weaved in and out of traffic, causing other motorists to have to swerve out of the way to avoid collision. Ritter ultimately crashed his truck at full speed into a line of cars stopped at a traffic light. The driver of the car that Ritter's truck struck was killed, and the driver of the next car in line broke his back. Ritter himself broke a femur and facial bones, suffered extreme pain, and repeatedly told first responders he wanted to die and asked to be shot.

### B.

### *Trial Court Proceedings*

### 1.

### *Charges*

The People charged Ritter with one count of murder (Pen. Code, § 187, subd. (a)) and one count of driving under the influence of a drug and causing

2

bodily injury to another (Veh. Code, § 23153, subd. (f)).  As an enhancement to the driving under the influence charge, the People alleged Ritter personally inflicted great bodily injury on the victim who broke his back. (Pen. Code, § 12022.7, subd. (a).)

2.

*People's Case*

Several eyewitnesses testified about Ritter's reckless driving and the resultant collision, as described in part I.A., *ante*.

Ritter's roommate testified that on the day of the accident, Ritter passed him, waved, and said, "I'll see you on the other side."  In prior conversations, Ritter had told the roommate he wanted to visit a dead friend and used "the other side" to refer to dying.

A deputy sheriff testified that about nine months before the fatal collision, he had been dispatched to Ritter's residence in response to a call from his mother about erratic behavior.  The deputy found Ritter locked in a room from which he said, "Unless you're here to shoot me in the head, go away."  Another deputy sheriff testified that about eight months before the collision, he and his partner found Ritter sitting on the wall of a freeway overpass, and when the partner pulled Ritter off the wall, Ritter said he wanted to die.

A forensic toxicologist testified that blood drawn from Ritter about 30 minutes after the collision contained methamphetamine, a central nervous system stimulant, at a level that indicated he was an abuser of the drug and was under its influence at the time of the crash.  The toxicologist explained an abuser who is under the influence of methamphetamine has poor impulse control and may speed and drive erratically, and as the influence wears off the abuser may fall asleep inappropriately.

3

A vehicle inspector found no defects in Ritter's truck that would have caused the crash. A collision scene investigator found no skid marks that would have indicated Ritter had attempted to slow or stop his truck before the collision. Deep gouge marks in the roadway indicated significant speed and force were involved in the crash.

3.

*Ritter's Case*

Ritter testified that on the day of the fatal collision he was "com[ing] down" from the high from the methamphetamine he had used the previous few days. While he was driving his truck to a restaurant at approximately 60 miles per hour, he changed lanes several times to pass slower vehicles. He proceeded through an intersection and then "dozed off for a couple of seconds" until sound from his truck's exhaust pipe reflected off another car and awakened him. Ritter realized he was headed for some cars ahead of him, looked at his right sideview mirror, changed lanes, and crashed into the line of vehicles in that lane. On cross-examination, Ritter admitted he was "cool, calm, and collected" and had a detailed memory of the events preceding the crash. He also admitted he knew reckless driving could cause fatal collisions and agreed the driving described by the eyewitnesses who testified at trial was reckless, but he denied driving that way.

A forensic consultant who reviewed the witness statements, Ritter's medical records, the toxicology report, and scientific literature testified Ritter did not have enough methamphetamine in his system to be under the influence at the time of the fatal collision.

4

## 4.

### *Jury Instruction Requests*

Based on his testimony he fell asleep right before the crash, Ritter requested the trial court instruct the jury on unconsciousness (CALCRIM No. 3425) and on involuntary manslaughter as a result of voluntary intoxication causing unconsciousness (CALCRIM No. 626). The court refused to give either instruction.

## 5.

### *Closing Arguments*

The prosecutor urged the jury to find Ritter guilty of implied malice murder for "driving like a maniac" and killing another motorist. The prosecutor argued Ritter was suicidal and high on methamphetamine, knew driving recklessly could cause a fatal collision, and deliberately weaved through traffic at high speed and crashed into a line of cars stopped at a traffic light.

Ritter's counsel wanted to argue the case was one of manslaughter, not murder, but the prosecutor objected, and the trial court would not allow counsel to argue manslaughter. Counsel instead argued the prosecutor had not met the burden of proof on implied malice and in describing the reasonable doubt standard told the jury: "[I]t has to be a decision that you can live with, not just today or tomorrow, . . . but it's going to be a decision that stays with you for the rest of your life. You don't make it in a vacuum. I think it's the type of decision you really got to be sure about, like when you decided who[m] to marry or whatever other important decision you make. It's got to sit right with you."

In rebuttal, the prosecutor disagreed with Ritter's counsel's description of the reasonable doubt standard. She argued proof beyond a reasonable

doubt "is what the jury instruction says, an abiding conviction the charges are true. You decide what that means to you. It is not an impossible standard, not compared to marriage. It is an abiding conviction that the charges are true. You decide what that is."

6.

### *Verdicts and Sentence*

The jury found Ritter guilty of murder and driving under the influence of a drug causing bodily injury, and found the great bodily injury enhancement allegation true. The trial court sentenced him to prison for 21 years to life.

II.

DISCUSSION

A.

### *Instructional Errors*

Ritter claims the trial court prejudicially erred by refusing to instruct the jury on unconsciousness (CALCRIM No. 3425) and on voluntary intoxication causing unconsciousness (CALCRIM No. 626). He contends unconsciousness, if not caused by voluntary intoxication, would have been a complete defense to the murder charge; and if caused by voluntary intoxication, unconsciousness would have reduced the murder to involuntary manslaughter. The court was required to give the requested instructions, argues Ritter, because there was substantial evidence from which the jury could have found he fell asleep before the crash and either was or was not voluntarily intoxicated. He contends the erroneous refusal to give the requested instructions was not harmless beyond a reasonable doubt and therefore requires reversal. On de novo review (*People v. Oropeza* (2007) 151

6

Cal.App.4th 73, 78), we find no error for the reasons discussed below, and therefore need not address Ritter's harmless error contention.

1.

*Unconsciousness*

"Persons who committed the act charged without being conscious thereof" are not "capable of committing crimes." (Pen. Code, § 26, par. Four.) Unconsciousness not caused by voluntary intoxication operates as a complete defense to a criminal charge. (*People v. Nieves* (2021) 11 Cal.5th 404, 463.) The trial court must instruct the jury on unconsciousness following introduction of substantial evidence that the defendant was unaware of the charged act when it was performed. (*People v. Halvorsen* (2007) 42 Cal.4th 379, 417 (*Halvorsen*); *People v. Rogers* (2006) 39 Cal.4th 826, 887-888.) In deciding whether substantial evidence supports the defense, the court does not assess the credibility of the evidence. (*People v. Salas* (2006) 37 Cal.4th 967, 982; *People v. Villanueva* (2008) 169 Cal.App.4th 41, 49.) To warrant an instruction on unconsciousness, the evidence must be sufficient to raise a reasonable doubt in the minds of the jurors that the defendant was aware of his acts when he committed them. (*Salas*, at p. 982; *People v. Heffington* (1973) 32 Cal.App.3d 1, 9 (*Heffington*); CALCRIM No. 3425.) The evidence at Ritter's trial was insufficient to warrant an unconsciousness instruction.

The pertinent conduct of which Ritter must have been aware at the time of its commission for him to be criminally liable was the reckless driving that resulted in the fatal collision. (See *People v. Moore* (2010) 187 Cal.App.4th 937, 939 [reckless driving that caused fatal collision supported implied malice murder conviction].) Several eyewitnesses testified Ritter weaved his way through traffic at high speed and nearly collided with several other vehicles before he crashed his truck into a line of cars stopped at a

7

traffic light. Ritter acknowledged that type of driving was dangerous and could cause a fatal collision. He testified he was coming down from a methamphetamine high when he got into his truck; he recalled in detail the route he traveled and the driving maneuvers leading up to the crash; he admitted he was in command of his faculties except for the couple of seconds he dozed off right before the crash; and when he woke up he attempted evasive maneuvers. Ritter's own testimony about the events preceding the collision and "[t]he complicated and purposive nature of his conduct in driving" make clear he was aware of his actions as they happened. (*Halvorsen*, *supra*, 42 Cal.4th at p. 418.) Ritter's citation to the testimony of the collision scene investigator that it was "a possibility" that Ritter fell asleep and for that reason did not apply his brakes before the crash does not alter this conclusion. Such speculation is insufficient to require an instruction on unconsciousness. (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 648.) Without sufficient evidence from which the jury could have had a reasonable doubt that Ritter was aware of his reckless driving as he was driving, the trial court had no duty to instruct the jury on unconsciousness. (See *People v. Froom* (1980) 108 Cal.App.3d 820, 830 [error to instruct on unconsciousness when no evidence from which jury could infer defendant was unconscious during commission of criminal act]; *Heffington*, *supra*, 32 Cal.App.3d at p. 10 [unconsciousness instruction properly refused in assault case when evidence did not show unawareness coexistent with fight].)

2.

*Involuntary Manslaughter*

Unconsciousness caused by voluntary intoxication is not a complete defense to a criminal charge, but it may reduce some homicides to involuntary manslaughter. (*People v. Ochoa* (1998) 19 Cal.4th 353, 423;

8

CALCRIM No. 626.) As discussed above, however, there was no substantial evidence Ritter was unconscious of the reckless driving that caused the fatal collision. Hence, whether he was voluntarily intoxicated or not, there was no factual basis for a jury instruction on the effect of voluntary intoxication causing unconsciousness on homicide crimes.

The request for the instruction was properly refused for other reasons as well. The statute defining involuntary manslaughter states it "shall not apply to acts committed in the driving of a vehicle." (Pen. Code, § 192, subd. (b).) Ritter killed by recklessly driving his truck into the victim's car. Another statute states that "[e]vidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, *or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought.*" (*Id.*, § 29.4, subd. (b), italics added.) A "defendant who unlawfully kills without express malice due to voluntary intoxication can still act with implied malice, which voluntary intoxication cannot negate" under the quoted statute. (*People v. Turk* (2008) 164 Cal.App.4th 1361, 1376 [considering predecessor statute]; accord, *People v. Morales* (2021) 69 Cal.App.5th 978, 997 [considering current statute]; see *People v. Martin* (2000) 78 Cal.App.4th 1107, 1114 (*Martin*) [statute was enacted "to preclude evidence of voluntary intoxication to negate implied malice aforethought"].) "By prohibiting evidence of voluntary intoxication to negate *implied* malice, the Legislature apparently agreed . . . that a defendant who acts with conscious disregard for life should be punished for murder regardless of whether voluntary intoxication impaired his or her judgment." (*People v. Soto* (2018) 4 Cal.5th 968, 977-978 (*Soto*).) Ritter was prosecuted for *implied* malice murder. (See *People v. Watson* (1981) 30 Cal.3d 290, 293, 300-301 [intoxicated driver who

9

kills another in collision may be prosecuted for implied malice murder].) Since his voluntary intoxication, even to the point of unconsciousness, could not have prevented his conviction of that crime, he was not entitled to the requested jury instruction on involuntary manslaughter (CALCRIM No. 626). (*People v. Boyer* (2006) 38 Cal.4th 412, 469, fn. 40; *People v. Carlson* (2011) 200 Cal.App.4th 695, 705-707 (*Carlson*).)

In his reply brief, Ritter argues that insofar as Penal Code section 29.4 precludes conviction of involuntary manslaughter based on voluntary intoxication causing unconsciousness, the statute violates his due process right to present relevant exculpatory evidence on mental state. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) Other appellate courts have considered the same argument and the same authority Ritter cites and have uniformly rejected the argument. (*People v. Berg* (2018) 23 Cal.App.5th 959, 969-970; *Carlson*, *supra*, 200 Cal.App.4th at pp. 707-708; *People v. Timms* (2007) 151 Cal.App.4th 1292, 1298-1301; *Martin*, *supra*, 78 Cal.App.4th at pp. 1115-1117.) "We agree with these cases. The Legislature has decided, for policy reasons, that evidence of voluntary intoxication is irrelevant to proof of certain mental states. The Legislature may validly make that policy decision." (*Soto*, *supra*, 4 Cal.5th at p. 981.)

## B.

### *Restriction on Closing Argument*

Ritter claims the trial court deprived him of effective assistance of counsel (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15) and of liberty without due process of law (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a)) by preventing counsel from arguing Ritter was not guilty of murder but might have been guilty of manslaughter. As part of this claim, Ritter again contends the court erred by refusing to instruct on involuntary

10

manslaughter based on voluntary intoxication causing unconsciousness. Ritter also contends counsel was entitled to argue Ritter did not act with implied malice and so was guilty of manslaughter, not murder, and to use manslaughter to illustrate and clarify for the jury the different mental states required for different types of vehicular homicide. By preventing counsel from doing so, Ritter complains, the court interfered with his right to counsel and lessened the prosecutor's burden of proof. He argues the limitation on counsel's argument was not harmless beyond a reasonable doubt and so requires reversal of the murder conviction. As we shall explain, the court did not err and we thus need not address Ritter's harmless error argument.

The trial court has discretion to limit the scope of closing argument to relevant and material matters. (Pen. Code, § 1044; *People v. Edwards* (2013) 57 Cal.4th 658, 743.) For reasons already discussed, Ritter's counsel was not entitled to argue Ritter was guilty of involuntary manslaughter. (See pt. II.A.2*., ante*.) Nor could counsel argue Ritter was guilty of voluntary manslaughter, because there was no evidence he killed the victim "upon a sudden quarrel or heat of passion." (Pen. Code, § 192, subd. (a).) The only potentially arguable type of manslaughter on the facts presented at trial was vehicular manslaughter. (*Id.*, §§ 191.5, subds. (a), (b), 192, subd. (c); see *Watson*, *supra*, 30 Cal.3d at p. 299 ["a defendant may be charged with second degree murder upon facts which also would support a charge of vehicular manslaughter"].) That offense, however, was not charged in the operative accusatory pleading either explicitly or implicitly, because vehicular manslaughter is a lesser *related* offense of murder, not a lesser *included* offense. (*People v. Hicks* (2017) 4 Cal.5th 203, 209, 211; *People v. Wolfe* (2018) 20 Cal.App.5th 673, 688.) If the defendant is charged with murder but not vehicular manslaughter, the trial court may not instruct the jury on

11

vehicular manslaughter unless the prosecutor agrees, because granting the defendant's unilateral request for instructions on the uncharged lesser related offense "would interfere with prosecutorial charging discretion, essentially allowing the defendant, not the prosecutor, to choose which charges are presented to the jury for decision." (*Hicks*, at p. 211; see *People v. Alvarez* (2019) 32 Cal.App.5th 781, 790; *Wolfe*, at p. 688.) Allowing the defendant to argue to the jury that he is guilty of an uncharged lesser related offense but not of the charged greater offense would likewise interfere with the prosecutor's charging discretion and is not permitted. (*People v. Brown* (2016) 6 Cal.App.5th 1074, 1087-1088; *People v. Valentine* (2006) 143 Cal.App.4th 1383, 1387-1388.) Because the prosecutor charged Ritter with murder but not vehicular manslaughter and objected to argument by Ritter's counsel that he might be guilty of manslaughter but not of murder, Ritter was "neither entitled to an instruction on a lesser related offense *nor to urge his conviction for that offense*." (*Valentine*, at p. 1388, italics added.)

Ritter's counsel of course was free to and did argue that the prosecutor had not proved beyond a reasonable doubt that Ritter acted with implied malice, the mental state required to find him guilty of murder. Counsel argued Ritter had no intent to kill, he did not intentionally drive his truck into the car whose driver was killed, and he did not deliberately act with conscious disregard for human life. Rather, counsel argued, the evidence showed Ritter drifted off to sleep while he was driving, he quickly awakened, and there was a collision. That was a "horrible tragedy" and an "accident," said counsel, but it was not an implied malice murder. Counsel ended by reminding the jurors of the reasonable doubt standard of proof and urging them to find Ritter not guilty. Thus, counsel was able to argue effectively that Ritter was at most negligent and did not kill with implied malice. The

12

trial court's ruling preventing counsel from arguing Ritter might have been guilty of manslaughter but not of murder "fell within its discretion to control the scope of closing argument and did not preclude defendant from making his central point." (*People v. Marshall* (1996) 13 Cal.4th 799, 854.)

## C.

### *Prosecutorial Misconduct*

As his final claim of error, Ritter accuses the prosecutor of misconduct for trivializing the reasonable doubt standard of proof during closing argument. Ritter contends that by arguing the decision to convict him was less weighty than a decision on whom to marry, the prosecutor committed a structural error that is reversible per se. Acknowledging the claim of error might have been forfeited because trial counsel failed to object to the prosecutor's remark, Ritter argues counsel was ineffective for failing to do so and urges us to reach the merits. We reject this claim of error.

Ritter forfeited the claim of prosecutorial misconduct. Generally, a defendant may not complain on appeal of prosecutorial misconduct unless the defendant made a timely assignment of misconduct on the same ground and asked the trial court to admonish the jury to disregard the misconduct. (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 306 (*Silveria*).) When the prosecutor told the jury the reasonable doubt standard is "not compared to marriage," Ritter neither objected nor requested an admonition. Nothing in the record indicates an objection would have been futile, and the court easily could have cured any misstatement of the law by the prosecutor by referring the jury to the instruction on reasonable doubt. Ritter therefore may not complain of the prosecutor's remark on appeal. (*People v. Centeno* (2014) 60 Cal.4th 659, 674; *People v. Williams* (2017) 7 Cal.App.5th 644, 686.)

13

Trial counsel was not ineffective for failing to object to the prosecutor's remark, because no objection was warranted. A defendant challenging the prosecutor's remarks to the jury must show that in the context of the whole argument and the instructions it was reasonably likely the jury understood or applied the remarks in an improper or erroneous way. (*Silveria, supra*, 10 Cal.5th at p. 306.) By arguing in rebuttal that the reasonable doubt standard was "not an impossible standard, not compared to marriage," the prosecutor was not suggesting to the jury that a level of certainty lower than that needed to select a spouse would suffice to find Ritter guilty. She was merely disagreeing with the argument of Ritter's counsel that the reasonable doubt standard applied to "the type of decision you really got to be sure about, like when you decided who[m] to marry." The disagreement was apt. "[S]ince the decision to marry is often based on a standard far less than reasonable doubt, as reflected in statistics indicating 33 to 60 percent of all marriages end in divorce," this court "strongly disapprove[d] of arguments suggesting the reasonable doubt standard is used in daily life to decide such questions as whether to . . . marry." (*People v. Nguyen* (1995) 40 Cal.App.4th 28, 36.) Moreover, in disagreeing with Ritter's counsel's analogy to the marriage decision, the prosecutor directed the jurors to the instruction they had been given on the reasonable doubt standard and told them it required them to have "an abiding conviction that the charges are true." That was a correct statement of the law. (*Victor v. Nebraska* (1994) 511 U.S. 1, 14-15; *People v. Potts* (2019) 6 Cal.5th 1012, 1033; see CALCRIM No. 220.) In thus taking exception to Ritter's counsel's marriage analogy, the prosecutor did nothing likely to mislead the jury on the applicable burden of proof. (*People v. Bell* (2019) 7 Cal.5th 70, 111-112; *Nguyen*, at pp. 36-37.) "There was no

14

misconduct and therefore no deficiency on counsel's part in failing to object." (*People v. Romero and Self* (2015) 62 Cal.4th 1, 27.)

## III.

## DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


O'ROURKE, Acting P. J.


GUERRERO, J.